[Cite as *In re A.C.*, 2013-Ohio-1782.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF A.C., L.B. AND J.B. DEPENDENT CHILDREN | : : : : : : : : : : : : | JUDGES:<br><br>Hon. W. Scott Gwin, P.J.<br>Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J.<br><br>Case No. 12 CA 29 & 13 CA 1<br><br><br><br><br>O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Guernsey County
Court of Common Pleas, Juvenile
Division, Case No. 12JC00176

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    April 12, 2013

APPEARANCES:

For Appellant M.C.:

Lindsey K. Donehue
120 Southgate Parkway
P.O. Box 464
Cambridge, Ohio 43725

For Appellant C.H.:

Feisul M. Khan
P.O. Box 273
Zanesville, Ohio 43702

For Appellee Guernsey County Children
Services:

Bryan C. Conaway
Assistant Prosecuting Attorney
139 West 8th Street
Cambridge, Ohio 43725

*Baldwin, J.*

{¶1}   Appellant M.C. and appellant C.H. appeal from the December 7, 2012 Journal Entry of the Guernsey County Court of Common Pleas, Juvenile Division, terminating their parental rights and granting permanent custody of A.C., L.B., and J.B. to  Guernsey County Children Services.

STATEMENT OF THE FACTS AND CASE

{¶2}   A.C. (DOB 12/29/06), J.B. (DOB 11/5/07), and L.B. (DOB 10/9/08) are the children of appellant M.C. Appellant C.H. is the father of A.C. The father of the other two children is not involved in this appeal.

{¶3}   On March 19, 2012, Guernsey County Children Services (GCCS) filed a complaint alleging that the three children were dependent children. The agency, in its complaint, sought emergency temporary custody of the children. On the same date, the agency filed a Motion for Emergency Temporary Custody. Pursuant to a Journal Entry filed on March 27, 2012, the trial court issued an ex parte order of custody to GCCS.

{¶4}   An adjudicatory hearing was held on May 31, 2012. As memorialized in a Journal Entry filed on June 18, 2012, the trial court found the children to be dependent children and ordered that they remain in the custody of GCCS.

{¶5}   Subsequently, on August 24, 2012, GCCS filed a motion seeking permanent custody of the children. A hearing on such motion was held on November 27, 2012.

{¶6}   At the hearing, Jennifer Mann, a licensed chemical dependency counselor with Alcohol & Drug Services of Guernsey County, testified that appellant

M.C. was a current client and that appellant M.C. had been diagnosed with opiate, cocaine and cannabis dependencies. Mann testified that appellant M.C. was assessed on August 12, 2011 and that the diagnoses were made at that time. Mann testified that she had seen appellant M.C. a total of 18 times since that time. According to Mann, appellant M.C. was doing well in counseling and was open and honest about her drug addiction.

{¶7} Mann further testified that appellant M.C. had negative drug screens on December 20, 2011, December 22, 2011, January 5, 2012 and January 12, 2012, but had positive screens for marijuana on April 10, 2012, May 29, 2012, and September 5, 2012. During her drug screen on October 29, 2012, appellant M.C. tested positive for Percocet and marijuana. Mann further testified that appellant M.C. also had had a positive drug screen on December 28, 2011 for Suboxone. Mann also testified that the last time she saw appellant M.C. was on October 29, 2012 and that appellant M.C. was still an open client, but was currently incarcerated in EOCC (Eastern Ohio Correction Center).

{¶8} On cross-examination, Mann testified that the recommendation was made for appellant M.C. to attend individual counseling and group therapy and that appellant entered EOCC before starting group therapy. Mann also testified that, during the last six months, appellant M.C. had improved and that she thought that, with appropriate care and therapy, appellant M.C. would be able to maintain her sobriety.

{¶9} On redirect, Mann testified that appellant M.C. was not tested for drugs between January 12, 2012 and April 10, 2012 and only once between May 29, 2012 and October 29, 2012.

{¶10} The next witness to testify was Patricia Johnson, a licensed independent chemical dependency counselor with Alcohol & Drug Services of Guernsey County. Johnson testified that appellant C.H, who had just gotten out of EEOC, was her client and that, at a September 6, 2011 appointment, she diagnosed him with opioid, cannabis and amphetamine dependencies and hallucinogen abuse. It was recommended that appellant C.H. continue with Johnson for individual counseling, that he attend a treatment group, that he submit to random drug testing and that he attend at least two AA meetings a week. Johnson testified that appellant kept only one appointment with her for individual counseling and that he cancelled an appointment on September 30, 2012. According to Johnson, "[h]e had, by then, missed three group sessions that I had, so I had mentioned that to him when he called about he needed to come to group, so he kept one group appointment on October 6th, 2011." Transcript at 44-45. Johnson testified that appellant C.H. missed four other appointments, one an individual appointment and the others group appointments, and that he was discharged on December 9, 2011 for non-compliance. She further testified that she did not perform drug testing on appellant C.H. due to his lack of attendance.

{¶11} When asked, Johnson testified that appellant C.H. had not asked to reenroll in counseling.

{¶12} On cross-examination, Johnson testified that appellant C.H.'s last contact with the agency was on October 6, 2011 and that she last saw him on

September 6, 2011. According to Johnson, appellant C.H. was sentenced to prison on October 4, 2012. On such date, appellant C.H.'s community control was revoked and he was ordered to serve two years in prison.

{¶13} Sylva Lawson, a caseworker with GCCS, testified that she was the ongoing caseworker for the three children in this case. She testified that she first became involved with the children in 2009. According to Lawson, a case was opened on November 5, 2009 and the children were removed from appellant M.C.'s home on November 18, 2009. The children were then placed into the temporary custody of their grandmother on April 20, 2010 and the agency was given protective supervision while working with the parents towards reunification. Lawson further testified that the grandmother was granted legal custody on November 15, 2010 and the case was closed on January 20, 2011. At that time, appellant M.C. had not successfully completed her case plan.

{¶14} Lawson testified that, on March 6, 2012, the grandmother contacted the agency and requested assistance in placing the children because she was having problems managing them and was being evicted from her home. As a result, the agency was granted ex parte custody on March 16, 2012. Lawson testified that the children had been in GCCS' custody since March 16, 2012 and that they were placed in foster care.

{¶15} Lawson also testified that at the time the agency took custody, she attempted to find other family members with whom to place the children, but was not successful. She next testified that appellant M.C.'s case plan required her to maintain safe, stable housing free of illegal drug use, of drug paraphernalia, and of impaired

people. Appellant M.C.'s case plan also required her to attend AA and NA groups, to submit to random urine screens, and to submit to a psychological assessment . Appellant M.C., per Lawson, had been non-compliant with her case plan. Lawson testified that appellant M.C. was currently incarcerated in EOCC and that, prior to her incarceration, she had been residing with her father and his girlfriend. Lawson testified that appellant M.C. had indicated that she had been sexually abused by her father, so that such placement was not appropriate for the children.

{¶16} Lawson further testified that appellant M.C. had completed, or was still attending prior to her incarceration, drug and alcohol counseling and AA and NA groups. She indicated that she was concerned that appellant M.C.'s drug screens were positive up until her incarceration. She testified that appellant M.C. testified positive for marijuana and cocaine in March of 2012 and that appellant M.C. never provided her with verification that she was attending NA or AA group meetings as required in her case plan. Appellant M.C. also failed to show up for a scheduled psychological evaluation on June 19, 2012. Appellant M.C. did have an evaluation performed by a different doctor in her attempts to receive social security disability benefits, but Lawson did not receive that assessment.

{¶17} Lawson also testified that appellant M.C. had not seen her children for probably two years because no visitation had been scheduled. She testified that appellant M.C. was told that she needed to have clean drug screens and to not be in jail to see her children. When asked whether appellant M.C. had made any effort to see her children since the March 29th case plan, Lawson testified that appellant M.C.

had contacted the agency by phone a couple of times and that she had come by once or twice when she did not have scheduled appointments.

{¶18} Lawson testified that the children last had contact with appellant M.C. in November of 2010 and that they were currently placed in the same foster home and were doing well. She indicated that the children got along well with their foster family and were bonded with the foster parents.

{¶19} At the hearing, Lawson testified that she had concerns that appellant M.C. had been charged with trafficking in crack cocaine. Appellant M.C. had been granted treatment in lieu of conviction, but Lawson testified that drug abuse was the issue that caused the children to be removed and was the reason why they could not be reunified with their family. She indicated that she also had concerns that appellant M.C's boyfriend was also charged. The following testimony was adduced when she was asked what concerns she had if the children were returned to appellant M.C.:

> I have concerns of, one, where is she going to have her children, housing; two , what people are going to be in her life, are they going to be safe people for her children to be around. [M.C.] had demonstrated over the past three years ongoing drug abuse issues. Her boyfriend also has drug abuse issues and was charged with rape recently of his daughter. So I'm concerned not only of the people that she brings into her home, their safety, but also the continued problems [M.C.] has in her own life.

Transcript at 77.

{¶20} Lawson indicated that appellant M.C. had no place to take the children and that even before she was incarcerated at EOOC, she did not have housing.

{¶21} Lawson was next questioned about appellant C.H. She testified that he had "zero compliance" with his case plan and was currently incarcerated in prison. Transcript at 78. Lawson testified that he had not completed drug and alcohol counseling, had not submitted to any drug tests, and did not attend his psychological evaluation. She further testified that appellant C.H. had seen his daughter, A.C., during the case and while A.C. was visiting with her grandmother. Lawson testified that the children could not be returned to appellant C.H. or appellant M.C. within a reasonable time.

{¶22} Lawson stated that she believed that it was in the best interest of the children if permanent custody was granted to GCCS because they deserved permanency and to be in a safe environment. She voiced concerns over the parents' continued positive drug tests and indicated that the agency had made reasonable efforts to reunify the family. According to Lawson, the children had no relationship with appellant M.C.

{¶23} On cross-examination, Lawson testified that, at a June 11, 2012 hearing, the trial court granted appellant M.C. supervised visitation on the condition that she had clean drug screens. Lawson admitted that appellant M.C. did not have any drug screens from June 18, 2012 until September 5, 2012.

{¶24} At the hearing, appellant M.C. testified that she was currently incarcerated at EOCC, a "prison slash rehab" facility, and that she had an expected release date of May 5, 2013. She testified that she had contacted the agency

regarding visitation four or five times and that although she left messages and her phone number, Lawson never called her back. She further testified that she contacted the children's' paternal grandmother two or three times a week when the grandmother had custody of the children, but that the grandmother never allowed her to have visitation.

{¶25} The last witness to testify was the CASA/Guardian ad Litem, B.J. Yates. She recommended that permanent custody be granted to GCCS because it was in the children's best interest. She testified that the children were bonded with their foster family. On cross-examination, Yates testified that she did not talk to the children about their wishes because of their young age. She testified that the children were on target growth wise and that she had seen them 15 times and had interviewed them in their foster home. According to Yates, she had not seen appellant C.H. since the agency obtained custody of the children.

{¶26} Pursuant to a Journal Entry filed on December 7, 2012, the trial court terminated appellants' parental rights and granted permanent custody of the three children to GCCS.

{¶27} Appellant C.H. appealed from the trial court's December 7, 2012 Journal Entry. His case was assigned Case No. 12 CA 29. Appellant C.H. raises the following assignments of error on appeal :

{¶28} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT APPOINTING AN ATTORNEY FOR THE MINOR CHILD.

{¶29} "II. THE TRIAL COURT ERRED IN FINDING THAT BY CLEAR AND CONVINCING EVIDENCE THE CHILD COULD NOT BE PLACED WITH ONE OF

HER PARENTS WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH ONE OF HER PARENTS IN THE FORESEEABLE FUTURE, THIS ERROR RESULTED IN THE WRONGFUL TERMINATION OF [C.H.'S] PARENTAL RIGHTS."

{¶30} Appellant M.C. also appealed from the trial court's December 7, 2012 Journal Entry. Her case was assigned Case No. 13 CA 1. Appellant M.C. raises the following assignment of error on appeal:

{¶31} "I. THE TRIAL COURT SHOULD NOT HAVE GRANTED PERMANENT CUSTODY BECAUSE THE COURT DID NOT CONSIDER THE WISHES OF THE CHILDREN AS REQUIRED BY ORC 2151.414(D)(b)."

{¶32} For purposes of judicial economy, we shall address the two cases together.

First Assignment of Error in Case No.12 CA 29

{¶33} Appellant C.H., in his first assignment of error, argues that the trial court erred when it failed to appoint an attorney for A.C., his daughter.

{¶34} In *In re Williams*, 101 Ohio St.3d 398, 805 N.E.2d 1110, 2004–Ohio–1500, the Ohio Supreme Court held that a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and is entitled to independent counsel under certain circumstances. "[C]ourts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." *Id.* at ¶ 17.

{¶35} The *Williams* court did not explain what circumstances might trigger the juvenile court's duty to appoint counsel. See, *In re A.T.,* 9th Dist. No. 23065, 2006–

Ohio–3919 at ¶ 57; *In re Wylie,* 2d Dist. No.2004CA0054, 2004–Ohio–7243, at ¶ 70. The facts of *Williams* indicate that the child whose custody was at issue was four years of age at the time he was initially placed in the temporary custody of the child protective agency. *Williams* at ¶ 2. He was subsequently returned to his mother, removed again, and was six years of age at the time the permanent custody hearing was conducted. *Williams* at ¶ 4. The child was represented by a guardian ad litem, who was an attorney, but was not appointed to represent the child in a dual capacity. *In re Williams,* 11th Dist. Nos.2002–G2454, 2002–G–2459, 2002–Ohio–6588, at ¶ 20. The child was said to have "repeatedly expressed a desire to remain with his mother," and the guardian ad litem recommended that permanent custody be granted to the agency. *Williams,* 2004–Ohio–1500, at ¶ 5.

{¶36} The appeals court in *Williams* emphasized that the child expressed his wish for reunification "often," "consistently," and "repeatedly." *Williams,* 2002–Ohio–6588, at ¶ 17, ¶ 20, and ¶ 9. He "often did not want to let appellant out of his sight." *Id.* at ¶ 9. Significantly, the appellate court recognized that "there is no need to consider the appointment of counsel based upon a child's *occasional* expression of a wish to be with a parent or because of a statement made by an immature child." (Emphasis added.) *Williams,* 2002–Ohio–6588, at ¶ 24; *In re A. T., supra*.

{¶37} In the case sub judice, there is no evidence that A.C. indicated that she wanted to live with appellant C.H.  The record does not support a conclusion that A.C. ever affirmatively expressed a desire to return home, nor does it support a conclusion that  A.C. consistently and repeatedly expressed such a desire, as was the case with the child in *Williams. In re A. T., supra* at ¶ 64. The record does not disclose any

conflict between the wishes of A.C. and the recommendations of the Guardian ad litem in this case, who is not an attorney.

{¶38} Based on the foregoing, and the overwhelming evidence supporting the trial court's findings that the child's best interests would be served by awarding custody to GCCS, we conclude that the trial court did not err in failing to appoint independent counsel .

{¶39} Appellant C.H.'s first assignment of error is, therefore, overruled.

Second Assignment of Error in Case No. 12 CA 29 and Case No. 13 CA 1

{¶40} Appellant M.C. and appellant C.H., in their assignments of error, challenge the trial court's order terminating their parental rights and granting permanent custody to GCCS. Appellant C.H. specifically argues that the trial court erred in finding that A.C., his daughter, could not and should not be placed with one of her parents within a reasonable time while appellant M.C. argues that the trial court should not have granted permanent custody because it did not consider the wishes of the children.

{¶41} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries,* 5th Dist. No. CA–5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). Furthermore, it is well established that the trial court is in

the best position to determine the credibility of witnesses. *See, e.g., In re Brown,* 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass,* 10 Ohio St .2d 230, 227 N.E.2d 212 (1967).

{¶42} R.C. 2151.414(B)(1) reads as follows: "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents....

{¶43} The trial court determined that the children could not be placed with either parent within a reasonable time nor should the children be placed with either parent. In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, a trial court is to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside

the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." *See* R.C. 2151.414(E)(1).

{¶44} In the case sub judice, there was testimony that the agency initially became involved with the family in 2009. There was testimony that appellant M.C. had a drug problem and, at the time of the hearing, was incarcerated after initially being charged with drug trafficking and was not due to be released until May 5, 2013. At the hearing, testimony was adduced that appellant M.C. had not seen the children for approximately two years. Moreover, Lawson testified that appellant did not have housing for the children.

{¶45} In addition, there was testimony that appellant C.H., who also has drug problems, was incarcerated and had never been part of the children's lives. As is stated above, Lawson testified that he completely failed to comply with his case plan. The Guardian ad Litem recommended that permanent custody be granted to the agency

{¶46} We find, based on the foregoing, that the trial court did not err in finding that the children could not and should not be placed with one of their parents within a reasonable time.

{¶47} The trial court next determined it was in the children's best interests to be placed in the permanent custody of GCCS. It is well-established that "[t]he discretion

which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No.2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), quoting *In re Awkal,* 95 Ohio App .3d 309, 316, 642 N.E.2d 424 (1994).

{¶48} In determining the best interest of a child for purposes of permanent custody disposition, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:

{¶49} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;

{¶50} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶51} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

{¶52} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶53} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶54} As is stated above, testimony was adduced that the children had been in the same foster home since March of 2012 and were doing well. While the children were bonded with their foster parents, there was testimony that they had limited contact with their parents and had been in and out of custody since 2009. The Guardian ad Litem recommended that permanent custody be granted because it was in their best interest due to their need for permanency. In addition, there was testimony that both appellants in this case were incarcerated and were unable to care to their children.

{¶55} While appellant M.C. argues that the trial court erred in granting permanent custody to the agency because the trial court did not consider the wishes of the children as required by R.C, 2151.414(D)(b), at the hearing, the Guardian ad Litem testified that she did not discuss their wishes with the children because of their young ages. At the time of the hearing, the children were four, five and nearly six years old. This Court, in *In the Matter of Turner*, 5th Dist. No. 2006-CA-45, 2006-Ohio-45, indicted that the trial court could not consider the wishes of the children due to their ages. The children in *Turner* were eight, seven and three years old. Moreover, the Guardian ad Litem, in the case sub judice, did testify, that she had visited with the children 15 times and that she had interviewed the children at their foster home. She was subject to cross-examination at the November 27, 2012 hearing. The trial court, in its Journal Entry, found that the wishes of the children, as expressed through the Guardian ad Litem, was for permanent custody to be awarded.

{¶56} Based on the foregoing, we find that the trial court did not err in finding that it was in the children's best interest for permanent custody to be granted to GCCS.

{¶57} The second assignment of error in Case No. 12 CA 29 and the sole assignment of error in Case No. 13 CA 1 are, therefore, overruled.

{¶58} Accordingly, the judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Wise, J. concur.


_____
HON. CRAIG R. BALDWIN


_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE


CRB

IN THE COURT OF APPEALS FOR GUERNSEY COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF: A.C., L.B. AND :
J.B.           :
DEPENDENT CHILDREN    :
             :   JUDGMENT ENTRY
             :
             :
             :
             :   Case No.  12 CA 29 & 13 CA 1
             :
             :
             :
             :

For the reasons stated in our accompanying Opinion on file, the judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed.  Costs assessed to appellants.

           _____
           HON. CRAIG R. BALDWIN

           _____
           HON. W. SCOTT GWIN

           _____
           HON. JOHN W. WISE